UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------  X

CARLOS FALLMAN,

                Plaintiff,

        - against -

HOTEL INSIDER LTD, AXEL
SODERBERG, SODERBERG CAPITAL
LTD, and HANS PHILLIPE KJELLGREN,

                Defendants.

---------------------------------------------------------  X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1|15|16__

**OPINION AND ORDER**

**14-cv-10140 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Carlos Fallman brings this diversity action against Hotel Insider LTD,

Axel Soderberg, Soderberg Capital LTD ("Soderberg Capital")[1] and Hans Phillipe

Kjellgren (collectively "defendants"), alleging breach of contract and related

claims based on defendants' termination of Fallman's employment in October

2014.  Defendants Soderberg and Soderberg Capital now move to dismiss for lack

---

    [1]    As noted in the Facts section, below, Soderberg Capital LTD changed
its name to Hotel Insider Technologies LTD over the course of events leading to
this action.  For simplicity's sake, given the two other Hotel Insider entities
involved in this action (Hotel Insider LTD and Hotel Insider, Inc.), I refer to this
entity as Soderberg Capital throughout this opinion.

-1-

of personal jurisdiction and failure to state a claim.[2]  For the following reasons,

defendants' motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND[3]

Hotel Insider LTD is a United Kingdom ("U.K.") company with a

principal place of business in London.[4]  On June 15, 2013, Fallman was hired by

Hotel Insider LTD as Vice President of Hotel Reviews.[5]  Fallman was the first

person hired in Hotel Insider LTD's New York office.[6]  Notwithstanding strong

performance, positive feedback, and assurances of job security, Fallman was

terminated without notice on October 28, 2014.[7]

Fallman's employment agreement with Hotel Insider LTD required

Hotel Insider LTD to provide 30 days' written notice prior to terminating his

employment,[8] and stipulated that he was "entitled to the compensation and benefits

---

[2]     The remaining defendants have failed to appear in this action.

[3]     All facts recited herein, unless otherwise noted, are taken from the
Second Amended Complaint ("Compl.").

[4]     *See* Compl. ¶ 2.

[5]     *See id.* ¶ 14.

[6]     *See id.*

[7]     *See id.* ¶¶ 15-21.

[8]     *See id.* ¶ 22.

[he] earned" prior to termination of the agreement.[9]  The agreement further provided that Fallman was entitled to reimbursement for all travel expenses,[10] "4 weeks paid vacations/days off,"[11] and "comprehensive healthcare."[12]  However, Hotel Insider LTD's termination of Fallman was not preceded by the requisite notice period,[13] and Fallman did not receive salary payment for his work during the month of October.[14]  Moreover, Hotel Insider LTD failed to reimburse Fallman for any of his travel expenses during the duration of his employment despite timely submission of claims and repeated requests.[15]  Hotel Insider LTD also failed to compensate Fallman for two months of unused vacations days[16] and failed to provide Fallman healthcare coverage until August 2014.[17]

On December 15, 2014 — less than two months after Fallman's

---

[9]     *Id.* ¶ 35.

[10]    *See id.* ¶ 24.

[11]    *Id.* ¶ 37.

[12]    *Id.* ¶ 41.

[13]    *See id.* ¶ 22.

[14]    *See id.* ¶¶ 31-36.

[15]    *See id.* ¶¶ 24-30.

[16]    *See id.* ¶¶ 38-40.

[17]    *See id.* ¶¶ 42-45.

termination — Hotel Insider LTD entered "administration," a form of insolvency in the U.K.[18]  When in administration, a company is managed by an appointed "administrator," an officer of the court empowered to manage the business's affairs "in the interests of the company's creditors as a whole."[19]  On December 23, 2014, the administrators for Hotel Insider LTD sold the company's assets to Soderberg Capital for £40,000 — an amount far below the company's fair market value at the time of the transaction.[20]  On January 21, 2015, Soderberg Capital changed its name to Hotel Insider Technologies Limited.[21]  Soon after, on February 2, 2015, Soderberg formed a new Delaware corporation, Hotel Insider, Inc., and registered the corporation with the New York Secretary of State.[22]  Hotel Insider Technologies Limited then transferred all of its assets to Hotel Insider, Inc.[23]  At all relevant times, Soderberg was the majority shareholder and co-owner of Hotel Insider LTD as well as the sole shareholder and director of Soderberg Capital and

---

[18]     *See id.* ¶ 68.

[19]     Insolvency Act 1986, sch. B1 ¶ 3(2) (Eng.).

[20]     *See* Compl. ¶ 69.

[21]     *See id.* ¶ 70.

[22]     *See id.* ¶ 71.

[23]     *See id.* ¶ 72.

Hotel Insider, Inc.[24]

Defendants made several false representations to Fallman prior to his employment which Fallman relied on when he decided to join Hotel Insider LTD.[25] Among the alleged misleading representations were Kjellgren's statements or assurances that (1) the New York office had substantial financial backing;[26] (2) Hotel Insider LTD was already using large-scale public relations and marketing efforts to build its brand;[27] (3) Hotel Insider LTD was in the process of creating the first-ever international rating system for hotels;[28] (4) Kjellgren had strong industry connections in Latin America;[29] and (5) Hotel Insider LTD would never allow hotels to offer free stays to reviewers.[30]

Defendants also made false statements to keep Fallman from leaving the company.[31]  Specifically, defendants told Fallman that (1) Hotel Insider LTD

---

[24]    *See id.* ¶¶ 4-7.

[25]    *See id.* ¶ 46.

[26]    *See id.* ¶ 47.

[27]    *See id.* ¶ 48.

[28]    *See id.* ¶ 49.

[29]    *See id.* ¶ 50.

[30]    *See id.* ¶ 51.

[31]    *See id.* ¶ 52.

would fully reimburse Fallman for *any* travel expenses;[32] (2) the company was in the process of procuring health coverage for Fallman;[33] and (3) Fallman's job was "100% secure."[34]

## II.   LEGAL STANDARD

### A.    Rule 12(b)(2)

#### 1.    Standard of Proof

A plaintiff has the burden of proving personal jurisdiction by a preponderance of the evidence.[35]  "[A] plaintiff need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion."[36] The plaintiff may make such a showing with "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."[37]  A court must construe all allegations in the light most favorable to the plaintiff and resolve all doubts in

---

[32]     *See id.* ¶ 53.

[33]     *See id.* ¶ 55.

[34]     *Id.* ¶ 57.

[35]     *See Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996).

[36]     *M & M Packaging v. Kole*, 183 Fed. App'x 112, 114 (2d Cir. 2006) (alteration in original) (citation omitted).

[37]     *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation marks and citations omitted).

plaintiff's favor.[38]

However, "a plaintiff may not rely on conclusory non-fact-specific jurisdictional allegations to overcome a motion to dismiss."[39]  Further, when a "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted."[40]

### 2.   Personal Jurisdiction Generally

"Federal courts are to apply the personal jurisdiction rules of the forum state."[41]  A court must undertake a "two-step inquiry" to determine if it can exercise personal jurisdiction over a foreign defendant.[42]  "First, we determine whether the defendant is subject to jurisdiction under the law of the forum

---

[38]     *See A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *See also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citation omitted).

[39]     *Doe v. Delaware State Police*, No. 10 Civ. 3003, 2013 WL 1431526, at *3 (S.D.N.Y. Apr. 4, 2013) (quotation marks omitted) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

[40]     *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567 (S.D.N.Y. 2012) (quoting *Schenker v. Assicurazioni Genereali S.p.A., Consol.*, 98 Civ. 9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002)).

[41]     *Penguin,* 609 F.3d at 35.

[42]     *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

state—here, New York.  Second, we consider whether the exercise of personal

jurisdiction over the defendant comports with the Due Process Clause of the United

States Constitution."[43]  Additionally, there are two types of personal jurisdiction:

"general or all-purpose jurisdiction, and specific or case-linked jurisdiction."[44]

Whereas general jurisdiction allows a court to adjudicate "any and all" claims

against a defendant regardless of whether the claims are connected to the forum

state,[45] specific jurisdiction renders a defendant amenable to suit based only on

claims "arising out or relating to the defendant's contacts with the forum state."[46]

It is well-settled that registering one's corporation with the New York Department

of State and designating an agent to receive process in New York constitutes

consent to general jurisdiction in New York courts.[47]

### 3.    Specific Jurisdiction Under New York's Long-Arm Statute

If general jurisdiction is not satisfied, a federal court sitting in

---

[43]     *Id.*

[44]     *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

[45]     *Id.*

[46]     *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

[47]     *See STX Panoecean (U.K.) Co. v. Glory Wealth Shopping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009).

diversity must "determine whether there is jurisdiction over the defendant under the relevant forum state's laws."[48]  Section 302(a)(1) of New York's long-arm statute provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business with the state or contracts anywhere to supply goods or services within the state."[49]  Section 302(a)(3) further provides for jurisdiction over a defendant who  "commits a tortious act without the state causing injury . . . within the state, except as to a cause of action for defamation of character arising from the act,"[50] where a defendant "(i) regularly does or solicits business . . . or derives substantial revenue from . . . services rendered in the state,[51] or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate . . . commerce."[52]

To comport with due process, specific jurisdiction requires both a "minimum-contacts" and a "reasonableness" inquiry.  *First*, the plaintiff must demonstrate that "the claim arises out of, or relates to, the defendant's contacts

---

[48]    *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

[49]    N.Y. Civil Practice Law and Rules ("C.P.L.R.") § 302(a)(1).

[50]    *Id.* § 302(a)(3).

[51]    *Id.* § 302(a)(3)(i).

[52]    *Id.* § 302(a)(3)(ii).

with the forum."[53]  As the Supreme Court recently explained, "the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant himself' creates with the forum State."[54]  Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . .  a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[55]  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[56]  *Second*, jurisdiction must be reasonable.[57]  Courts weigh the following factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose

---

[53]    *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013).  *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" its activities toward the forum and the litigation must "arise out of or relate to" those activities).

[54]    *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

[55]    *Id.* at 1123 (citation omitted).

[56]    *Id.* (quoting *Burger King*, 471 U.S. at 475).

[57]    *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

-10-

on the defendant; (2) the interests of the forum state in adjudicating the case;  (3) the plaintiff's interest in obtaining convenient and effective relief;  (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy;  and (5) the shared interest of the states in furthering substantive social policies.[58]

**B.     Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[59]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[60]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[61]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[62]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

---

[58]     *Asahi Metal Indus. Co. v. Superior Ct. Of Cal.*, 480 U.S. 102, 113-14 (1987).

[59]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[60]     *See* 556 U.S. 662, 678-79 (2009).

[61]     *Id*. at 679.

[62]     *Id*. at 678 (citation omitted).

plausibly give rise to an entitlement for relief."[63] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[64]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[65]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[66]  "'[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.'"[67]

## III.   APPLICABLE LAW

### A.   Choice of Law

"A federal court exercising diversity jurisdiction must apply the

---

[63]    *Id*. at 679.

[64]    *Id*. at 678 (citation omitted).

[65]    *Id*. (quotations omitted).

[66]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[67]    *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989)).

choice of law analysis of the forum state."[68]  Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."[69]  Absent an actual conflict, "New York, as the forum state, would apply its law."[70]  If there is an actual conflict, a court then determines which law applies based on the "center of gravity" or "grouping of contacts" test.[71]  Under this approach, a court considers a spectrum of significant contacts, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domiciles or places of business of the contracting parties.[72]  The party claiming that foreign law applies "'carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case.'"[73]

---

[68]    *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006).

[69]    *Id.* (citation omitted).

[70]    *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006).

[71]    *GlobalNet*, 449 F.3d at 383.

[72]    *See In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 227 (1993).  The traditional choice of law factors — place of contracting, place of negotiation, and place of performance — are given the heaviest weight in this analysis. *See id.*

[73]    *Bigio v. Coca-Cola Co.*, No. 97 Civ. 2858, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010) (quoting *Baker v. Booz Allen Hamilton, Inc.*, 358 Fed.

**B.     Leave to Amend**

Rule 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[74]  Although "[t]he Court should freely give leave when justice so requires,"[75] it is "within the sound discretion of the district court to grant or deny leave to amend."[76]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[77] Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to amend is futile and should be denied.[78]

**IV.    DISCUSSION**

**A.     Personal Jurisdiction**

Before reaching the substance of Fallman's claims against defendants,

---

App'x 476, 481 (4th Cir. 2009)).

[74]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[75]     Fed. R. Civ. P. 15(a)(2).

[76]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[77]     *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[78]     *See Smith v. United States*, 554 Fed. App'x 30, 32 (2d Cir. 2013).

this Court must determine whether it has personal jurisdiction over Soderberg and Soderberg Capital.  It is plaintiff's burden to make a *prima facie* showing of personal jurisdiction.

Plaintiff argues that both defendants consented to general jurisdiction under section 301 of the New York Civil Practice Law & Rules by registering to do business in New York.  This argument is meritless — Soderberg Capital is *not* registered to do business in New York.  While Hotel Insider LTD and Hotel Insider, Inc. are both registered to do business in New York, and while Soderberg is a director of both of these enterprises, Soderberg's role as director is not enough for this Court to exercise general personal jurisdiction over him in his personal capacity.

In the alternative, plaintiff argues that specific jurisdiction over Soderberg and Soderberg Capital is proper under New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1).  I begin with Soderberg Capital.  "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York, and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."[79]  Soderberg Capital

---

[79]    *G31000 N. Am., Inc. v. Paris*, No. 14 Civ. 3885, 2014 WL 6604790, at *3 (S.D.N.Y. Nov. 21, 2014) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

fails on the first prong.  "In our Circuit, the following factors are considered in

determining whether an out-of-state defendant transacts business in New York: (1)

whether the defendant has an ongoing contractual relationship with a New York

corporation; (2) whether the contract was negotiated or executed in New York . . .

(3) what the choice-of-law clause is in any such contract; and (4) whether the

contract requires franchisees to send notices and payments into the forum state or

subjects them to supervision by the corporation in the forum state."[80]  Soderberg

Capital's only contact with New York is its sale of assets to Hotel Insider, Inc.

There is no ongoing contractual relationship with Hotel Insider, Inc.  The contract

was executed in London, and specifies that it is governed by English law.  The

agreement does not require payments to be sent into New York.  "The mere fact

that an out-of-state defendant enters into a contract with a company headquartered

in New York" does not establish personal jurisdiction — a greater weight of

contacts is needed.[81]  No such contacts exist here.  This Court therefore lacks

personal jurisdiction over Soderberg Capital, and it must be dismissed from this

---

[80]     *Navaera Sciences, LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 374 (S.D.N.Y. 2009).

[81]     *Id.* at 375.

action.[82]

This Court does, however, have personal jurisdiction over Soderberg himself.  Soderberg is a corporate officer — indeed, the sole shareholder and sole director — of Hotel Insider, Inc., and a corporate officer and director of Hotel Insider LTD, both registered to do business in New York and subject to the general jurisdiction of New York courts.  Under New York law, jurisdiction over corporate officers is proper under New York's long-arm statute where those officers are primary actors in the activities that gave rise to the litigation.[83]  There can be no serious dispute that Soderberg is a primary actor, especially considering the fact that Hotel Insider, Inc. entered into the asset purchase agreement with Soderberg Capital basely solely on his vote.

**B.    Choice of Law**

Having disposed of the jurisdictional issues, I turn to the substance of Fallman's claims against Soderberg.  This requires an initial determination as to

---

[82]    Plaintiff makes clear in his briefing that the only facts linking Soderberg Capital to New York are its ownership by Soderberg and its sale of its assets to Hotel Insider, Inc.  Because there are no additional facts to be pled concerning Soderberg Capital's interactions with New York, there is no possible scenario whereby plaintiff could demonstrate this Court's personal jurisdiction over the entity.  Leave to amend is denied as futile.

[83]    *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

which body of law — that of New York, or that of the U.K. — applies to Fallman's claims.

### 1.    Claims 1-5

Fallman's first five claims — for breach of contract, fraudulent inducement of contract, non-payment of wages and benefits, unjust enrichment, and negligent misrepresentation — all relate to Fallman's employment agreement. That agreement contains a broad choice of law provision that provides, *inter alia*, that "[a]ny dispute arising out of, or relating to, this Agreement shall be subject to the jurisdiction of the New York state and federal courts."[84] "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."[85]

No party alleges that the selection of New York law in the agreement's choice-of-law provision was fraudulent. There is no violation of public policy; on the contrary, it would be a violation of public policy *not* to apply New York law to these claims. Hotel Insider LTD was licensed to do business in

---

[84]    Employment Agreement, Exhibit A to the 10/29/15 Declaration of Carlos Fallman in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ¶ 9(e).

[85]    *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) LTD*, 230 F.3d 549, 556 (2d Cir. 2000).

New York, the employment agreement was negotiated and executed in New York, plaintiff was domiciled in New York and performed his duties in the office Hotel Insider LTD leased in New York.  These facts are more than enough to demonstrate that New York has sufficient contacts with the transaction.[86] Fallman's first five claims are governed by New York law, pursuant to the choice-of-law provision in Fallman's employment agreement with Hotel Insider LTD.[87]

### 2.    Claims 6-8

Fallman's claims for fraudulent conveyance concern a distinct set of facts from his first five claims: facts alleging that Hotel Insider LTD and its

---

[86]    Defendants argue that Fallman's tort claims relating to the employment agreement are outside the scope of that agreement's choice–of-law provision pursuant to *Financial One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325 (2d Cir. 2005).  This misinterprets the Second Circuit's holding in that case.  In *Financial One*, the Second Circuit held that certain claims unrelated to a financial products contract fell outside the contract's broad forum selection clause, but noted that "all claims relating to [the contract] . . . were heard in the contractually selected forum." *Id.* at 335.  The Second Circuit's determination that tort claims unrelated to the contract fell outside that contract's forum selection clause provides more than enough room for tort claims directly related to the contract to be governed by that contract's forum selection clause.

[87]    I would come to the same conclusion even if I applied New York's choice of law principles to the tort claims relating to the employment contract. Assuming a conflict between U.K. and New York law on these claims, the weight of the interests between the U.K and New York for tort claims related to the alleged fraudulent formation and breach of an employment contract negotiated and entered into in New York, for services rendered by a New York resident in New York, clearly lie with New York.

-19-

controllers transferred Hotel Insider LTD's assets through a string of shell companies ending in Hotel Insider, Inc. for the purpose of defrauding Hotel Insider LTD's creditors — of which Fallman was one, based on the violation of his employment agreement. These claims for fraudulent conveyance have nothing to do with the formation or breach or performance of Fallman's employment agreement, and therefore are not related to the agreement, and therefore are not subject to the agreement's forum selection clause. A forum selection clause can be broad enough to encompass claims sounding in tort that relate to the rights and obligations created by the contract, but as the Second Circuit held in *Financial One Public Company. v. Lehman Brothers Special Financing, Inc.*, claims not related to a contract fall outside that contract's scope — and the body of law that governs those claims must be determined according to New York's choice of law principles.[88]

   I begin with a determination of whether a conflict exists between New York and U.K. law. Fallman's sixth, seventh, and eighth claims are all brought under various provisions of the New York Debtor and Creditor Law ("NYDCL"). The NYDCL permits recovery under a theory of constructive fraudulent conveyance, where the plaintiff is not required to prove that the conveyance was

---

[88]  414 F.3d at 333-36.

made with an intent to defraud creditors;[89] and actual fraudulent conveyance, where intent to defraud creditors must be demonstrated.[90]

A real conflict between U.K. and New York law exists as to both of these theories of liability.  Section 423 of the Insolvency Act of 1986, the U.K. statute that prohibits fraudulent conveyance of assets, requires proof of "some degree of showing of intent" in order to find liability.[91]  The statute requires that "an order shall only be made if the court is satisfied that [the alleged fraudulent transaction] was entered into . . . *for the purpose* (a) of putting assets beyond the reach of [a claimant] . . . or (b) of otherwise prejudicing the interest of such a person . . . ."[92]  There is no provision, as there is in New York law, allowing for liability without proof of intent.  Accordingly, an actual conflict exists between New York and U.K. law with respect to Fallman's constructive fraudulent conveyance claim.

A conflict also exists with respect to Fallman's claim for actual fraudulent conveyance.  Under New York law, if actual intent to defraud a creditor

---

[89]    *See* New York Debtor and Creditor Law § 273.

[90]    *See id.* § 276.

[91]    *In re Hellas Telecomms. (Luxembourg) II SCA v. TPG Capital Mgmt., L.P.*, 524 B.R. 488, 517 (Bankr. S.D.N.Y. 2015).

[92]    Insolvency Act 1986, § 523(3) (Eng.) (emphasis added).

is proven, the conveyance will be set aside regardless of the adequacy of the consideration given in the fraudulent conveyance.[93]   Under the Insolvency Act of 1986, however, a claim for actual fraudulent conveyance requires proof that the defendant sold assets "for a consideration the value of which, in money or money's worth, is significantly less than the value, in money or money's worth, of the consideration provided by [the buyer]."[94]

Given the actual conflict between New York and U.K. fraudulent conveyance law, this Court must apply the body of law of the jurisdiction having the greatest interest in the claims at issue.   In regards to Fallman's fraudulent conveyance claims, the weight of the interests lies with the United Kingdom. Laws concerning fraudulent conveyances are "conduct-regulating"; therefore, where there is a choice between conflicting fraudulent conveyance laws, the location where the alleged fraud occurred controls — regardless of the location of plaintiff's injury.[95]   Fallman alleges that Hotel Insider LTD, a U.K. company, fraudulently conveyed its assets to Soderberg Capital, a U.K. company, via a sale

---

[93]     *See In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (internal citation omitted).

[94]     Insolvency Act 1986, § 423(1)(c) (Eng.).

[95]     *Lyman Commerce Solutions, Inc. v. Lung*, No. 12 Civ. 4398, 2014 WL 476307, at *3 (S.D.N.Y. Feb. 6, 2014) (citing *Licci v. Lebanese Canadian Bank*, 672 F.3d 155, 158 (2d Cir. 2012)).

negotiated and executed in the United Kingdom.  U.K. law governs Fallman's

fraudulent conveyance claims.

    **C.    Claims**

        **1.    Breach of Contract**

        Fallman has adequately pled breach of contract.  "To make out a

viable claim for breach of contract in New York, a complaint need only allege (1)

the existence of an agreement, (2) adequate performance of the contract by the

plaintiff, (3) breach of contract by the defendant, and (4) damages."[96]  Here,

Fallman has alleged the existence of an employment agreement whose obligations

he performed and Hotel Insider LTD breached, causing him damage.  Fallman has

also alleged facts sufficient to raise plausible arguments for piercing Hotel Insider

LTD's corporate veil, and facts sufficient to raise the possibility of finding both

that Hotel Insider, Inc. inherited Hotel Insider LTD's obligations and to pierce

Hotel Insider, Inc.'s corporate veil, reaching Soderberg individually.  Defendant's

motion to dismiss Fallman's breach of contract claim is therefore denied.

        **2.    Fraudulent Inducement of Contract**

        Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff

alleging fraud to "'(1) specify the statements that the plaintiff contends were

---

    [96]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375
F.3d 168, 177 (2d Cir. 2004).

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[97] While Fallman's complaint alleges several false statements made by defendants, none of these statements are attributed to Soderberg, many fail to identify the speaker, and none indicate where and when the statements were made.  These allegations are insufficiently particular under the Federal Rules.  Fallman's claim for fraudulent inducement of contract is therefore dismissed, with leave to replead with sufficient particularity.

### 3.  Non-Payment of Wages and Benefits

Fallman's third claim is based on a violation of section 198 of the New York Labor Law, which provides, in relevant part, that "in any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee . . . costs [and] a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs." Section 198, however, does not create a cause of action, and is "limited to actions for wage claims founded on the substantive provisions of Labor Law article 6."[98] Article 6 of the New York Labor Law covers very specific substantive items such

---

[97]    *Lerner v. Fleet Bank, NA*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[98]    *Gottlieb v. Kenneth D. Laub & Co. Inc.*, 82 N.Y.2d 457, 459 (1993).

as the timing of payment of sales commissions,[99] proper and improper wage deductions,[100] and consent for direct deposit of wages.[101]  Here, Fallman only alleges a breach of his employment contract with Hotel Insider LTD and does not allege a substantive violation of any provision of Article 6 of the New York Labor Law.  Because there is no alleged violation of Article 6, Fallman has no claim for fees under section 198.  This claim is therefore dismissed.

### 4.    Unjust Enrichment

A plaintiff may recover on a claim for unjust enrichment if it can show that "(1) defendant was benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."[102]  While unjust enrichment and other quasi-contractual claims are precluded by the existence of a valid and enforceable contract governing the same subject matter, where there is a bona fide dispute as to who is bound by the contract's terms, a plaintiff may proceed with a claim for unjust enrichment.[103]  While it is undisputed that Hotel Insider LTD and

---

[99]    *See* N.Y. Lab. Law § 191-c.

[100]    *See id.* § 193.

[101]    *See id.* § 192.

[102]    *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citation omitted).

[103]    *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996).

Fallman executed an employment agreement, defendants dispute whether

Soderberg Capital — and Hotel Insider, Inc. — are bound by the terms of the

agreement as successors-in-interest to Hotel Insider LTD.  Because defendants

dispute they are bound by the employment agreement, Fallman is permitted to

plead a quasi-contractual claim in the alternative.[104]

### 5.    Negligent Misrepresentation

Claims for negligent misrepresentation in New York require a "special

relationship" requiring a defendant to provide correct information to a plaintiff.[105]

"Courts have routinely held that the employer-employee relationship does not

constitute a special relationship sufficient to support a claim for negligent

misrepresentation."[106]  Indeed, the sort of special relationship contemplated by

New York courts is quite narrow: "'Liability for negligent misrepresentation has

been imposed only on those persons who possess unique or specialized expertise,

or who are in a special position of confidence and trust with the injured party such

---

[104]    *See Space, Inc. v. Simowitz*, No. 08 Civ. 2854, 2008 WL 2676359, at *5 (S.D.N.Y. July 8, 2008).

[105]    *Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009)(internal quote omitted).

[106]    *Id.*

that reliance on the negligent misrepresentation is justified.'"[107]  This standard has

been applied to professionals such as lawyers and doctors, and technical experts

such as engineers[108] — not individuals in arm's length relationships such as

employer/employee and debtor/creditor.  The only relationship between Fallman

and defendants in this action is that of employee and employer. There is no

suggestion in the Complaint of any other relationship between the parties.

Fallman's claim for negligent misrepresentation is therefore dismissed.

### 6.    Fraudulent Conveyance

As explained above, U.K. law governs Fallman's fraudulent

conveyance claims.  Fallman only pled fraudulent conveyance under New York

law; these claims must therefore be dismissed, with leave to amend the Complaint

to plead fraudulent conveyance under U.K. law.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED as to

Soderberg Capital for lack of personal jurisdiction, GRANTED as to plaintiff's

fraudulent inducement of contract, non-payment of wages and benefits, negligent

misrepresentation, and fraudulent conveyance claims, and DENIED as to all

---

[107]    *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d
565, 578 (2011) (quoting *Kimmel v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).

[108]    *Kimmell*, 89 N.Y.2d at 263-64.

remaining claims.  Leave to amend is granted for plaintiff's fraudulent inducement

of contract and fraudulent conveyance claims only.  Any amended Complaint must

be filed by February 5, 2016. The Clerk of the Court is directed to close this

motion (Dkt. No. 20).  A conference is scheduled for February 8, 2016, at 4:00

p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 15, 2016

-28-

**–Appearances–**

**For Plaintiff:**

Jon L. Norinsberg, Esq.
Law Offices of Jon L. Norinsberg
225 Broadway , Suite 2700
New York, NY 10007
(212) 791-5396

Bennitta L. Joseph, Esq.
Boris Kogan & Associates
277 Broadway
New York, NY 10007
(917) 887-6448

Chaya M. Gourarie, Esq.
Lumer & Neville
225 Broadway, Suite 2700
New York, NY 10007
(212) 791-5396

**For Defendants:**

John R. Bauer, Esq.
Ruberto, Israel & Weiner, P.C.
255 State Street, 7th Floor
Boston, MA 02109
(617) 557-5936